## UNITED STATES DISTRICT COURT
## DISTRICT OF MINNESOTA

| | |
|---|---|
| Andria Addison, on behalf of herself and all others similarly situated,<br><br>      Plaintiff,<br><br>vs.<br><br>AMC Entertainment, Inc., and American Multi-Cinema, Inc.<br><br>      Defendants. | Case No. _____<br><br>**CLASS ACTION COMPLAINT**<br><br>**(Jury Trial Demanded)** |

   1.  Plaintiff Andria Addison ("Plaintiff"), individually and on behalf of all other individuals and entities similarly situated, brings this class action complaint against AMC Entertainment, Inc. ("AMCE"), and American Multi-Cinema, Inc. ("American Multi-Cinema") (collectively "Defendants") for statutory damages, injunctive relief, and any other available legal or equitable remedies, resulting from Defendants' illegal action of contacting Plaintiff and Class members through SMS or "text" messages on Plaintiff's and Class members' cellular telephones, in violation of the Telephone Consumer Protection Act, 47 U.S.C. § 227 *et seq*. ("TCPA"), thereby invading Plaintiff's and Class members' privacy.

## INTRODUCTION

   2.  According to a recent study by the Pew Research Center, 69% of cellular users who use text messaging receive unwanted text message spam, and "[o]f those

texters, 25% face problems with spam/unwanted texts at least weekly."[1] Plaintiff is one such person who regularly receives unwanted text messages.

3.   As part of their effort to promote business, Defendants engaged in an especially aggressive and deleterious form of marketing: the transmission of unauthorized advertisements, in the form of "text message" calls to the cellular telephones of consumers throughout the nation.

4.   Defendants' practice caused consumers actual harm, not only because consumers were subjected to the aggravation that necessarily accompanies mobile spam, but also because consumers frequently have to pay their cell phone service providers for the receipt of such spam, and such messages diminish battery life, waste data storage capacity, and are an intrusion upon privacy and seclusion.

5.   In order to redress these injuries, Plaintiff, on behalf of herself and the Class of similarly situated individuals described below, brings this suit under the TCPA, which specifically prohibits unpermitted voice and text calls to cell phones.

6.   As will be discussed, Defendants have sent text messages to consumers without their prior express written consent to receive such text messages, and in a manner that violates the privacy rights of Plaintiff and members of the Class.

7.   The TCPA was designed to prevent calls and messages like the ones described within this Complaint, and to protect the privacy of citizens like Plaintiff.

8.   On behalf of the Class, Plaintiff seeks an injunction requiring Defendants to

---

[1] Source: http://www.pewinternet.org/2012/08/02/mobile-phone-problems/ (last visited: February 17, 2015).

cease all unlawful text messages and an award of statutory damages to Class members, together with costs and reasonable attorney's fees. All allegations contained herein are based upon Plaintiff's personal knowledge as to himself and his own acts and experiences, and, as to all other matters, upon information and belief, based on the investigation conducted by his attorneys.

## JURISDICTION AND VENUE

9. This Court has jurisdiction over this class action lawsuit under 28 U.S.C. § 1331 and 47 U.S.C. § 227.

10. This Court has personal jurisdiction over Defendants because Defendants conduct substantial business in Minnesota, Defendant American Multi-Cinema is registered to do business in Minnesota, and the illegal text sent by Defendants was received in this District.

11. Venue is proper in this District under 28. U.S.C § 1391(a) because Defendant American Multi-Cinema resides in this District and a substantial part of the events giving rise to the claim occurred in this District.

## PARTIES

12. Plaintiff is an individual who resides in Anoka County, Minnesota.

13. Defendant AMCE is an intermediate holding company and is a wholly owned subsidiary of AMC Entertainment Holdings, Inc. AMCE's headquarters and principal executive offices are in Leawood, Kansas.

14. Defendant American Multi-Cinema owns and operates a chain of movie theatres in the U.S. It is organized and exists under the laws of the State of Delaware. It

is registered with the Minnesota Secretary of State to do business in Minnesota. American Multi-Cinema is a subsidiary of AMCE. Substantially all of the employees who work for Defendants are employed by American Multi-Cinema, which is referred to as "OpCo" in AMCE's public SEC filings.

15. As of December 31, 2014, Defendants operated or held interests in 348 theatres with a total of 4,960 screens, primarily in North America, including six theatres in Minnesota.

## COMMON FACTUAL ALLEGATIONS

16. In recent years, marketers who often have felt stymied by federal laws limiting solicitation by telephone, facsimile machine, and e-mail have increasingly looked to alternative technologies through which to cheaply send bulk solicitations. One of the newest types of such bulk marketing is to advertise through Short Message Services.

17. The term "Short Message Service" or "SMS" describes a messaging system that allows cellular telephone subscribers to use their cellular telephones to send and receive short text messages, usually limited to 120 – 500 characters.

18. An "SMS message" is a text message call directed to a wireless device through the use of the telephone number assigned to the device. When an SMS message call is successfully made, the recipient's cell phone rings, alerting him or her that a call is being received.

19. Unlike more conventional advertisements, unwanted SMS calls can actually cost their recipients money, because cell phone users more frequently pay their

respective wireless service providers either for each text message call they receive or incur as usage allocation deduction to their text plan, regardless of whether or not the message is authorized.

20.  Text messages, or "SMS" calls, are "calls" within the context of the TCPA.

21.  Bulk SMS messaging is a lucrative and inexpensive marketing platform for companies such as Defendants.  Messaging platforms leverage the most direct communication link between a brand and its consumers—more than 97 percent of text messages are read; more than 90 percent within the first three minutes.  Very few other marketing channels can match that.[2]

22.  Beginning at least by 2013, Defendants launched an aggressive marketing campaign to boost its SMS texting marketing database and profile.

23.  For example, calls to action promising consumers they could receive $1 off a large fountain drink by providing their cell phone numbers to Defendants were plastered on posters, signage, and on checkout screens at concession stands in Defendants' movie theatres.

24.  Consumers that provided their cell phone numbers were automatically included in Defendants' SMS program which subsequently sent multiple text messages to those consumers.  Defendants did not obtain consumers' prior express written consent to send them text message advertisements.

---

[2] *See* Lauren Johnson, AMC Theatres builds SMS program through incentivized summer campaign, Mobile Commerce Daily (May 14, 2013), *available at* http://www.mobile commercedaily.com/amc-theatres-builds-sms-program-through-incentivized-summer-campaign.

## PLAINTIFF'S FACTUAL ALLEGATIONS

25. In 2012, Plaintiff signed up for Defendants' customer rewards program, AMC Stubs, while attending a movie at one of Defendants' movie theatres. Plaintiff paid a fee to become an AMC Stubs member for one year.

26. One year later, Plaintiff received a notice that her AMC Stubs membership would lapse if she did not renew it.

27. Plaintiff did not renew her membership, and she was informed in 2013 that her membership had expired.

28. Plaintiff did not expressly consent to receive autodialed telemarketing calls to her cell phone within the meaning of the TCPA.

29. On or about April 23 2015, Plaintiff's cell phone rang, indicating that a text call was being received.

30. The "from" field of the transmission was identified cryptically as "242-424," which is an abbreviated telephone number known as a SMS short code operated by Defendants and/or Defendants' agents. The body of this text message read as follows:



31. The text implied that Plaintiff was a member of Defendants' AMC Stubs program. However, Plaintiff's AMC Stubs membership lapsed at least one year prior to her receipt of the unsolicited text message.

32. Upon information and belief, since October 16, 2013, Defendants sent or transmitted, or had sent or transmitted on their behalf, the same or substantially the same text messages *en masse* to a list of thousands of wireless telephone numbers using a computerized automatic telephone dialing system as defined by the TCPA that stores telephone numbers from a database, or dials random or sequential numbers.

33. Upon information and belief, members of the Class received similar messages that were sent *en masse* using an automatic telephone dialing system, also known as an "auto-dialer"; the device Defendants used to send the aforesaid text messages had the capacity to store or produce telephone numbers to be called using a random or sequential number generator and to dial such numbers.

34.     These text messages from Defendants, or its agents, violated 47 U.S.C. § 227(b).

## CLASS ACTION ALLEGATIONS

35.     Plaintiff brings this action on behalf of herself and as a class action under the provisions of Rule 23(a), (b)(2), and (b)(3) of the Federal Rules of Civil Procedure. The Class is defined as follows:

> All persons or entities in the United States and its Territories who received one or more text message advertisements from or on behalf of Defendants since October 16, 2013.

Plaintiff reserves the right to redefine the Class prior to class certification.

36.     Excluded from the Class are Defendants, Defendants' officers, directors, and employees.

37.     This action is properly maintainable as a class action. Members of the Class are so numerous that their individual joinder is impracticable. The precise number of members is unknown at this time, but is believed to be at least several thousand individuals. The true number of proposed members is, however, known by Defendants, and thus, Class members may be notified of the pendency of this action by first class mail, electronic, and published notice using information in Defendant's membership and marketing records.

38.     A class action is superior to other methods for the fair and efficient adjudication of the claims herein asserted, and no unusual difficulties are likely to be encountered in the management of this class action. Additionally, the prosecution of

separate actions by individual members of the Class would create a risk of inconsistent or varying adjudications, establishing incompatible standards of conduct for Defendants.

39. Rule 23(a)(2) and Rule 23(b)(3) are both satisfied because there are questions of law and fact which are common to the Class and which predominate over questions affecting any individual Class member. The common questions include, *inter alia*, the following:

   a. whether Defendants violated the TCPA by sending unauthorized text messages to Plaintiff and members of the Class;

   b. whether the equipment Defendants used to send the text messages in question was an automatic telephone dialing system as defined by the TCPA;

   c. whether such messages were sent to telephone numbers assigned to cellular telephones;

   d. whether the means by which Defendants acquired Class members' cellular phone numbers was in a written agreement, bearing the signature of the person called;

   e. whether the means by which Defendants acquired Class members' cellular phone numbers clearly and conspicuously informed Class members they may receive advertisements or telemarketing messages by means of an automatic telephone dialing system;

   f. whether the means by which Defendants acquired Class members' cellular phone numbers clearly and conspicuously informed Class members that they were not required to sign or enter into the agreement as a condition of purchasing any property, goods, or services;

   g. whether Defendants' actions were knowing or willful.

   h. whether Plaintiff and members of the Class are entitled to statutory damages under the TCPA;

   i. whether Plaintiff and members of the Class are entitled to treble damages based on Defendants' knowing or willful conduct; and

  j. whether Plaintiff and members of the Class are entitled to equitable relief, including but not limited to injunctive relief and restitution.

  40. Plaintiff's claims and the claims of members of the Class all derive from a common nucleus of operative facts. That is, irrespective of the individual circumstances of any Class member, liability in this matter will rise and fall with core issues related to Defendants' conduct.

  41. Plaintiff's claims are typical of the claims of the Class members. Plaintiff has the same interest as all members of the Class in that the nature and character of the challenged conduct is the same.

  42. Plaintiff will fairly and adequately represent and protect the interests of the Class. Plaintiff's interests are entirely consistent with, and not antagonistic to, those of the other members of the Class. Plaintiff has retained competent counsel experienced in the prosecution of consumer and class action litigation.

  43. Defendants have acted or refused to act on grounds generally applicable to the Class, making injunctive and declaratory relief appropriate with respect to the Class as a whole.

## CAUSES OF ACTION

### COUNT I
### (Violation of 47 U.S.C. § 227)

  44. Plaintiff incorporates by reference the foregoing allegations as if fully set forth herein.

  45. The TCPA states, in part:

> It shall be unlawful ... (A) to make any call (other than a call made for emergency purposes or made with the prior express consent of the called party) using any automatic telephone dialing system or an artificial or prerecorded voice … (iii) to any telephone number assigned to a … cellular telephone ….

47 U.S.C. § 227(b)(1).

46. The TCPA defines "telemarketing call," or "telephone solicitation," as "the initiation of a telephone call or message for the purpose of encouraging the purchase or rental of … goods, or services, which is transmitted to any person." 47 U.S.C. § 227(a)(4).

47. The TCPA defines an "automatic telephone dialing system" as "equipment which has the capacity (A) to store or produce telephone numbers to be called, using a random or sequential number generator; and (B) to dial such numbers." 47 U.S.C. § 227(a)(1).

48. Before sending a text message, the party sending the text message must obtain "prior express consent" from the called party. "Prior express consent" must:

- Be in the form of an agreement in writing, bearing the written or electronic signature of the person providing consent;

- Specify the telephone number to which the person is consenting to be called;

- Clearly and conspicuously authorize the company to call the person using an auto-dialer system or prerecorded message for telemarketing purposes; and

- Clearly and conspicuously disclose that consent is not a condition of purchasing goods or services.

27 F.R. § 64.1200(f)(8).

49. Defendants made telephone solicitations, including, but not limited to, the text messages depicted above, to the wireless telephone numbers of Plaintiff and members of the Class.

50. The text messages sent to Plaintiff and the Class members were sent using equipment that had the capacity to store telephone numbers retrieved from Defendants' database and to dial such numbers. The equipment can also be programmed to generate and dial random or sequential numbers. By using such equipment, Defendants were able to effectively send text messages simultaneously to thousands of wireless telephone numbers *en masse* without human intervention.

51. The text calls were made through the use of a short code dialing service and without the prior express written consent of Plaintiff and the Class members.

52. Defendants' conduct in sending said text messages violates 47 U.S.C. § 227(b)(1)(A)(iii).

53. Defendants' conduct in sending said text messages was a knowing and willful violation of 47 U.S.C. § 227.

54. As a result of Defendants' violation, the members of the Class suffered actual damages by, *inter alia*, having to pay their respective wireless carriers for the text messages where applicable and, under 47 U.S.C. § 227(b)(3)(B), are each entitled to, *inter alia*, a minimum of $500 in damages for each violation of the TCPA, and up to $1,500.00 if Defendants' violation of the TCPA is determined to be knowing or willful.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff prays for relief as follows:

a. That the Court determine that this action may be maintained as a class action under Rules 23(a), 23(b)(2), and (b)(3) of the Federal Rules of Civil Procedure, that Plaintiff be certified as Class representative and Plaintiff's counsel be appointed as counsel for the Class;

b. That the unlawful conduct alleged herein be declared to be illegal and in violation of the TCPA;

c. That Defendants be enjoined from engaging in the same or similar practices alleged herein;

d. That, pursuant to 47 U.S.C. § 227(b)(3), Plaintiff and each Class member be awarded their monetary loss, or $500 in statutory damages for each and every violation of the TCPA; and up to $1,500 for each willful and knowing violation;

e. That judgment be entered against Defendants on behalf of Plaintiff and members of the Class;

f. That Plaintiff and members of the Class recover their costs of the suit, and attorneys' fees as allowed by law; and

g. For all other relief allowed by law and equity.

## DEMAND FOR JURY TRIAL

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiff demands a trial by jury on all issues so triable.

Dated: May 6, 2015                                **ZIMMERMAN REED, PLLP**

*/s/ J. Gordon Rudd, Jr.*
J. Gordon Rudd, Jr. (MN Bar No. 222082)
Patricia A. Bloodgood (MN Bar No. 157673)
June P. Hoidal (MN Bar No. 033330X)
1100 IDS Center, 80 South 8th Street
Minneapolis, MN 55402
Tel: (612) 341-0400
Gordon.Rudd@zimmreed.com
Patricia.Bloodgood@zimmreed.com
June.Hoidal@zimmreed.com